IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

ALFRED L. FRAZIER,                )
                                  )
            Plaintiff,            )
                                  )
                                  )
v.                                )          No. 3:05-CV-230
                                  )
USF HOLLAND, INC.,                )
                                  )
            Defendant.            )

## MEMORANDUM OPINION

This civil action is before the court for consideration of the "Motion of
Defendant USF Holland, Inc. for Summary Judgment" [doc. 41]. Plaintiff has filed a
response [doc. 49], and defendant has submitted a reply [doc. 51]. The court has determined
that oral argument will not be necessary, and the motion is ripe for the court's consideration
and determination.

Plaintiff has filed this action for alleged violation of Title VII of the Civil
Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et. seq.*; 42 U.S.C. § 1981; and the
Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. section 4-21-101, *et. seq.* based
upon his race. Plaintiff is African American. For the reasons set forth herein, the motion
will be granted, and this case will be dismissed.

I.

*Factual Background*

The facts presented are taken from the parties' submissions concerning the pending motion as well as the complaint and are the facts relevant to plaintiff's claims. Defendant, USF Holland, Inc., is a freight delivery service that operates nationally and has a terminal in Knoxville. On May 12, 2004, plaintiff, Alfred Frazier, applied for work with the defendant, and he was hired on May 28, 2004, as a "driver casual" employee to work on an "as needed" basis. Driver casuals drive trucks and assist on the dock at the end of a driving shift. Casual employees who perform well and meet defendant's expectations can be eligible to become regular employees who must serve a thirty to sixty day probationary period. Plaintiff was called to work for eleven days between May 28, 2004, and June 23, 2004.

The decision was then made to cease calling plaintiff to come in to work. Defendant's position is that plaintiff's performance was inadequate and that he did not have the skill level for the work. Terminal Manager Frank Rose stated that the decision to cease calling the plaintiff to work was made because he took a long time to make deliveries; he frequently got lost and called the dispatcher for directions; he did not always call in for additional pick ups; he was reportedly absent for approximately four hours without checking in with dispatch; he was not adept at operating the fork lift; and he had trouble locating freight on the dock to load onto trucks. Rose also testified that he did not personally know

plaintiff and he did not know or consider plaintiff's race when he decided to discontinue calling him for work.

Plaintiff testified that he was "singled out" and treated differently than white workers in that he received less training because he was not paired with an experienced worker as is defendant's custom; he was assigned old trucks to drive that were not road worthy; and he was discontinued as a casual worker while a white causal worker hired with him, Earl Deever, was retained.

On September 9, 2004, plaintiff filed an EEOC/THRA charge that identified the period of discrimination as May 28, 2004, through June 2004. The right to sue letter was issued March 10, 2005, and this complaint was filed May 4, 2005. Plaintiff had previously filed a charge of discrimination against the defendant back in 1997.


II.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988) (quoting Fed. R. Civ. P. 56(c)). The moving party may discharge its burden by demonstrating that the non-

moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

III.

*Analysis*

To withstand a motion for summary judgment in a Title VII case ,[1] the plaintiff must present direct evidence of discrimination or present circumstantial evidence through a prima facie case. *See Mitchell*, 964 F.2d at 582. There is no direct evidence of discrimination in this case; therefore, plaintiff must establish a prima facie case using the well known and established *McDonnell Douglas/Burdine* burden-shifting framework. To establish a prima facie case of racial discrimination under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), plaintiff must show that 1) he is a member of a protected class, 2) he was subjected to an adverse employment action, 3) he was qualified, and 4) he was replaced by someone not in plaintiff's protective class or treated differently than similarly-situated persons who were not in plaintiff's protected class. *See McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006).

The only challenge to plaintiff's prima facie case is at the fourth prong. Plaintiff contends that he was treated differently than other white employees, so this is a

---

[1] The claims raised under the THRA and § 1981 are analyzed under the same framework as Title VII. *Newman v. Federal Express Corp*., 266 F.3d 401, 406 (6th Cir. 2001); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001) (citing *Mitchell v. Toledo Hosp*., 964 F.2d 577, 582 (6th Cir. 1992); *Raines v. Shoney's , Inc.*, 909 F.Supp. 1070 (E.D.Tenn. 1995); *Bruce v. W. Auto Supply Co.*, 669 S.W.2d 95 (Tenn. Ct. App. 1984)). Thus, the court's analysis and conclusions concerning plaintiff's Title VII claims apply equally to and are dispositive of the claims brought under § 1981 and the THRA.

disparate treatment case.[2]  "Disparate treatment occurs when an employer treats some employees less favorably than others because of race, religion, sex, or the like." *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995).  "To prevail on a claim of disparate treatment a plaintiff must show that [his] employer intentionally discriminated against [him]." *Lynch v. Freeman*, 817 F.2d 380, 382 (6th Cir. 1987); *see also Lovas v. Huntington Nat'l Bank*, No. 99-3213, 2000 WL 712355, at *5 (6th Cir. May 22, 2000).  Intent can be shown by direct evidence or inferred from a prima facie showing of discrimination. *Huguley*, 52 F.3d at 1370; *see also Shah v. Gen. Elec. Co.*, 816 F.2d 264, 267 (6th Cir. 1987) (proof of discriminatory motive can be inferred from differences in treatment).  Ultimately, to prevail in this Title VII discrimination action, the plaintiff has to show that the adverse employment action would not have occurred except for his race.  *Simon v. City of Youngstown*, 73 F.3d 68, 70 (6th Cir. 1995).

In order to demonstrate that he was "similarly situated" to the employees who he claims were treated differently or more favorably, plaintiff must prove that all relevant aspects of his employment situation were "nearly identical" to those of the other employees. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (citing *Ruth v. Children's Med. Ctr.*, No. 90-4069, 583, 1991 WL 151158, at *6 (6th Cir. Aug. 8, 1991)).

---

[2] There is no proof that plaintiff was replaced by a Caucasian individual.  Plaintiff was asked in his deposition if he knew whether white individuals had been hired after June 2004 for driver/dock workers. His response was that he sees new faces in Holland trucks locally, but he has no idea whether these persons are casual or regular, full-time employees.  This testimony warrants no further discussion and certainly is inadequate to establish the fourth prong of plaintiff's prima facie case.

With regard to being "similarly situated," the Sixth Circuit has stated:

> Thus, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employers' treatment of them for it.

*Mitchell*, 964 F.2d at 583 (citations omitted). More recently, the Sixth Circuit explained "similarly situated" in *Clayton v. Meijer, Inc.*, 281 F.3d 605 (6th Cir. 2002):

> As this Court first explained in *Mitchell*, "[i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated *in all respects*." 964 F.2d at 583 (emphasis in original). As further explained in *Ercegovich* [*v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998)], "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated'; rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" 154 F.3d at 352 (emphasis in original) (citation omitted). Finally, in *Perry* [*v. McGinnis*, 209 F.3d 597 (6th Cir. 2000)] we explained that "this Court has asserted that in applying the standard [that plaintiff must show that he is treated differently than similarly situated employees from outside the class] courts should not demand exact correlation, but should instead seek relevant similarity." 209 F.3d at 601.

*Id.* 610-611.

Once plaintiff establishes a prima facie case, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for its actions, in this case the decision to

7

cease calling the plaintiff to work. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas*, 411 U.S. at 802). The defendant does not need to prove the nondiscriminatory reason but needs to "merely articulate a valid rationale." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) ( citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993)). If the defendant meets its burden, the burden then shifts to the plaintiff to produce evidence from which a jury could find that the proffered reason is a pretext for discrimination. *Burdine*, 450 U.S. at 253.

In order to show pretext, plaintiff must do more than just impugn the legitimacy of the employer's asserted justification; "the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)); *see also Pierce*, 40 F.3d at 84 (plaintiff must do more than impugn employer's asserted justification; "plaintiff must also adduce evidence of the employer's discriminatory animus."). With regard to pretext, the Sixth Circuit has stated:

> To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)(citations omitted); *see also Manzer*, 29 F.3d at 1084. "To prove pretext, the plaintiff must introduce admissible

evidence to show 'that the proffered reason was not the true reason for the employment decision' and that racial animus was the true motivation driving the employer's determination." *Barnes v. United Parcel Serv*., 366 F. Supp. 2d 612, 616 (W.D. Tenn. 2005) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993)). At all times, the ultimate burden of persuasion remains with the plaintiff. *Burdine*, 450 U.S. at 253.

Before performing the burden shifting analysis on plaintiff's claims, the court notes that in his complaint and deposition plaintiff claimed that he applied for employment with the defendant in 1993 and that from that time through 1996 he made repeated visits to defendant's Knoxville terminal in search of employment. There is no documentation in the record that he applied for work in 1993. In any event, defendant argued in its motion that any claims based on these facts are time barred. In his response, plaintiff admittedly limits his discrimination claims to discreet acts that occurred between May 24, 2004, and June 2004. Therefore, it is not necessary for the court to address the statute of limitations arguments because plaintiff's claims under Title VII, § 1981, and the THRA arising in this time period were timely raised in the complaint.

Prima Facie Case

Defendant argues that plaintiff has not demonstrated a prima facie case because he has not met the fourth prong of the burden-shifting analysis, that he was treated differently than similarly situated employees not in his protected class. Plaintiff asserts three instances

when he contends he was treated differently because of his race: unequal training, assignment of old, non-roadworthy trucks, and a white casual worker, Earl Deever, being retained. The court will address each contention individually.

## Unequal Training

Undisputed testimony in the record indicates that defendant's practice with new workers on the dock is to pair them with an experienced worker. The amount of training time depends upon the employee's skill level. Also, defendant hires persons who have some experience working a freight dock and driving delivery trucks.

Plaintiff claims that he did not receive the same training on the dock as "new faces" he saw arrive to work on the dock. He contends these "new faces" got help from supervisors that he did not, though he admits co-workers helped when he asked for help. To prove this claim, plaintiff must do more than just show he was denied training opportunities; he must show that the denial of training meant he was not treated as favorably as similarly situated non-minority employees who received the opportunities denied to him. *Martin v. Gen. Elec. Co.*, No. 1:04 CV 206, 2005 WL 1114449, at *7 (N.D. Ohio May 9, 2005).

However, plaintiff has made no attempt to show that these "new faces" were similarly situated to him in all relevant respects. These other workers have not been identified, nor have they been shown to be members of an unprotected class. There is no information offered concerning when these workers were hired, what their prior experience

was, and whether they had performance issues as were noted with the plaintiff.[3]  As a result, plaintiff has failed to demonstrate that these "new faces," who he contends received training that he did not, were similarly situated to him.  Thus, plaintiff cannot establish a prima facie case based on unequal training.

## Non-roadworthy Trucks

Plaintiff also contends that he received disparate treatment because of the trucks he was assigned to drive.  It is undisputed that truck assignments are based on seniority and distance to be traveled and that older trucks are used for shorter, city runs.  Plaintiff claims that he would be early for truck assignments and that workers who arrived after him would get good trucks.  He also contends that Eddie Allen, the person who handed out the truck assignments, would tell him, "Here, Al, here's your assignment for the day. I've got something special for you."  He also claims the mechanic expressed concern about his using a particular truck and to be careful with it.

However, plaintiff has not demonstrated that he was similarly situated with the white workers he claims were given better trucks.  Again, these workers have not been identified nor compared to plaintiff.  The following exchange occurred at plaintiff's deposition:

---

[3] On his job application, plaintiff was asked to list the platform equipment he could operate. He answered, "Fork Lift 1973 - to 2002."

> Q.     Now, these other guys who you said would come in and get the better trucks, do you know, were they full-time, regular employees?
>
> A.     I don't know.  I'm going to say they were casuals, the one in my little group.  They were casuals with me, six or seven white guys and here is Al.  Al gets the crappy truck.  They get the trucks that everybody else drives.
>
> Q.     Do you have names of these other six or seven guys?
>
> A.     I don't.
>
> Q.     How do you know they were casual and not either probationary or full-time, regular employees?
>
> A.     When you come in in the morning, they would ask through the window, "Where's my casuals?"  "Here we are."  Okay, assignments are set out.  The senior guys have already pretty much knew who was casual because of the group we were in.  You come in ----

This testimony does not affirmatively demonstrate that the workers he claims got better trucks were similarly situated to him.  Plaintiff does not know the names of these workers and just concludes they were casuals with him, but only after he stated he did not know the status of their employment.  Yet even if they were casuals, plaintiff still has not shown that he was similarly situated to them in all relevant respects, for example, whether these alleged casuals and plaintiff had the same seniority or drove similar routes.  This factor is especially telling in light of the fact that plaintiff only worked as a casual employee a total of eleven days.  The court thus finds that plaintiff has not made out a prima facie case of disparate treatment based on truck assignments.

### Earl Deever

Plaintiff further contends that a white casual worker, Earl Deever, was retained while he was not. However, plaintiff again makes no effort to show that this co-worker was similarly situated to him. In fact, there is a dearth of information about Deever in the record.[4] The only facts offered about him are that he was a white casual worker who received permanent employment. This does not make him similarly situated to the plaintiff. There is no indication how long Deever had worked as a casual and whether he had performance deficiencies like those reported about the plaintiff. Without an adequate showing that Deever was similarly situated to plaintiff in all respects, the fact that Deever obtained permanent employment while plaintiff did not does not make out a prima facie case.

However, even if it is assumed that plaintiff has demonstrated a prima facie case, defendant has articulated a legitimate, non-discriminatory reason for ceasing to call him for work. Rose, the terminal manager, made the decision to no longer use the plaintiff. Rose stated that he received complaints from supervisors that plaintiff frequently got lost on his deliveries and made an unreasonable number of calls for directions; he did not always call in about additional pick-ups; he was absent one time from the terminal for four hours without checking in; he was slow and inefficient on the dock; he had trouble locating freight to load; and he was not adept at operating a fork lift. The burden then shifts to plaintiff to

---

[4] Plaintiff's brief references pages 137 and 138 of his deposition for testimony regarding Deever. Those pages are not included in plaintiff's submission. Regardless, plaintiff's argument does not attempt to demonstrate that Deever was similarly situated to him as required to make out a prima facie case.

demonstrate that these reasons are a pretext for discrimination.

<u>Pretex**t**</u>

As previously set forth herein, plaintiff can show pretext by demonstrating that defendant's proffered reason: 1) has no basis in fact, 2) did not actually motivate the adverse employment action, or 3) was insufficient to warrant the adverse employment action. *Manzer,* 29 F.3d at 1084. Plaintiff at this stage must produce evidence to show by a preponderance of the evidence that the proffered reason is pretextual. *Burdine*, 450 U.S. at 253. Plus, at all times plaintiff has the ultimate burden of persuasion. *Id*.

Plaintiff contends that defendant's proffered reason is a pretext because defendant did not follow its own policies and procedures regarding his training since he was not paired with an experienced employee; defendant has not offered testimony from anyone who actually saw plaintiff's performance on the dock; there is no policy concerning how often a driver should call dispatch yet plaintiff was terminated for calling too many times; plaintiff was told to "take his time" but was terminated for being too slow; and dock supervisor Riddle testified that being slow on the dock or as a driver would be a basis for more training rather than a reason to prevent a casual employee from becoming a permanent employee.

None of these contentions challenge the adequacy or validity of defendant's perception that plaintiff did not meet and would not meet its expectations for its employees.

The decision to cease calling the plaintiff for work was not based on just one deficiency but several and is supported by particular facts in the record. The Sixth Circuit has adopted the "honest belief" rule concerning an employer's proffered reason for discharging an employee. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (quoting *Smith*, 155 F.3d at 807). "An employer need not prove that complaints or perceptions about an employee are true before using such complaints as a basis for action. As long as an employer honestly believes complaints about an employee are true, such complaints can serve as a justification for an employment action and will not be regarded as pretextual." *Koval v. Dow Jones & Co.*, 86 F. App'x 61, 67-68 (6th Cir. 2004) (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)). The plaintiff then has the opportunity to show that the employer's belief was not honestly held. *Smith*, 155 F.3d at 807.

The evidence of record supports defendant's claim of honest belief. Through the affidavit of Rose and the deposition testimony of Rose and supervisors who dealt with plaintiff, defendant has identified numerous "particularized facts that were before it at the time the decision was made" to discontinue calling the plaintiff, facts that support defendant's stated reason. Plaintiff's assertions concerning his job performance and his denials of defendant's assessment of his performance are not sufficient to call into question

defendant's honest belief that plaintiff's job performance was deficient and unsatisfactory. *Majewski*, 274 F.3d at 1117; *see also Harvest v. Tenn. Bd. of Regents*, No. 3:03-CV-702, 2005 WL 1378835, at *10 (E.D.Tenn. June 9, 2005) ("Plaintiff's subjective view about defendant's employment actions, without further evidentiary support, may not by itself establish that the decision was pretextual."). "[T]he plaintiff must allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite*, 258 F.3d at 493-94 (citations omitted). Plaintiff has not presented such evidence.

In addition, the plaintiff may not attack the soundness of an employment decision as a means of proving pretext. *Hein v. All Am. Plywood Co.*, 232 F.3d 442, 490 (6th Cir. 2000); *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997) ("The soundness of the employer's business judgment . . . may not be questioned as a means of showing pretext.") (citation omitted). "Whether that business judgment was sound, in hindsight or otherwise, is irrelevant." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 595 (6th Cir. 2003) (citing *Majewski*, 274 F.3d at 1117). Rose made a business decision to stop calling the plaintiff to work. In Rose's business judgment, based on input from several supervisors, plaintiff was not performing at an acceptable level and was not going to ever perform at a level that would meet defendant's expectations. An employer can terminate an employee for a good reason, a bad reason, or no reason; it just cannot terminate him for a

discriminatory reason.

> Title VII does not diminish lawful traditional prerogatives of an employer in making business decisions so long as the employer's reasons are not discriminatory in violation of Title VII. It is axiomatic that under Title VII, this Court does not sit as a "super-personnel" board of review to second guess or re-examine an employer's nondiscriminatory business decisions.

*Seay v. Tenn. Valley Auth.*, 340 F. Supp. 2d 832, 842 (E.D. Tenn. 2004) (citations omitted).

Further, Rose testified in his affidavit that Holland ceased calling other casual workers for poor performance, and these workers were Caucasian. He stated:

> Mr. Frazier was not the only casual employee whom Holland management stopped calling to work due to poor performance. For example, Mark Reagan, who began working at Holland contemporaneously with Mr. Frazier, had worked as a casual employee for approximately seven days when Holland ceased calling him; Matthew Cox had worked as a casual employee for approximately four weeks when Holland ceased calling him; and Cory Brooks worked as a casual employee for approximately two years when Holland ceased calling him. Mr. Reagan, Mr. Cox and Mr. Brooks are Caucasian.

Rose also testified in his affidavit that since he became terminal manager in Knoxville, he has hired approximately four African-American individuals as part-time casual employees who work on a regular basis or as full time or probationary employees.

Plaintiff has not met his burden of demonstrating the defendant's proffered reason for its decision to cease calling him to work was a pretext for discrimination. On this basis as well, his claims fail.

In the final analysis, plaintiff has simply failed to present evidence from which a jury could reasonably find that defendant stopped calling him to work because of his race. Plaintiff must prove that this employment decision "was the product of intentional race discrimination," and that there is a causal connection between the decision to cease calling him and his race as an African-American. *Seay*, 340 F. Supp. 2d at 840. Plaintiff has not made this required showing. The record contains sworn affidavit testimony from Rose that he did not know the plaintiff or his race when he made the decision to cease calling him for work. There is also sworn affidavit testimony from Chris Cannon, the Dispatch Manager who supervised plaintiff, in which he states that when he and the dock supervisor Mike Fansler discussed plaintiff's performance, race was not a factor nor was it discussed. Plaintiff has not offered any proof that even inferentially rebuts this sworn testimony.

This lack of knowledge concerning plaintiff's race also impacts the burden shifting test and the prima facie elements of the intentional race discrimination case. *Seay,* 340 F. Supp. 2d at 842. In *Seay*, the district court found that the burden shifting test and prima facie elements "cannot rationally create a reasonable inference of intentional race discrimination based on circumstantial evidence where the decision-maker . . . and his advisor/consultant . . . did not have actual knowledge of Seay's race." *Id*. The district court relied in part on *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987) and *Johnson v. Northwest Airlines*, 839 F. Supp. 1253, 1259 (E.D. Mich. 1993).

*Robinson* involved an unsuccessful black job applicant who sued for racial discrimination under Title VII. There was no showing in the record that the employer had knowledge of the plaintiff's race. The Ninth Circuit wrote, "An employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race. . . . [T]he *McDonnell Douglas* elements would not rationally create [the inference of intentional discrimination] if, as here, a plaintiff offers proof that he is Black, but there is no showing by direct or indirect evidence that the decision-maker knew this fact." *Robinson*, 847 F.2d at 1316.

In *Johnson*, a black flight attendant was discharged as a result of an investigation into in-flight liquor sales. He sued his employer under Title VII for race discrimination. The district court relied on *Robinson* and held that because there was no evidence suggesting that any of the decision makers knew the race of the flight attendants under investigation, the plaintiff did not make out a prima facie case of intentional race discrimination. Arguably, the lack of any proof that the decision maker, Rose, knew plaintiff was black would be an additional basis for plaintiff's failure to demonstrate a prima facie case.

The court also observes in its closing analysis that the defendant hired plaintiff knowing he was black, the same defendant that plaintiff contends terminated him after eleven days of work because of his race. This fact not only strains credibility but also further demonstrates the total lack of a causal connection between the decision to no longer call the

plaintiff for work and his race.


## Retaliation Claim

Plaintiff also alleges a retaliation claim based on the fact that he filed a discrimination charge against the defendant in 1997. In order to make out a prima facie case of retaliation under Title VII, the plaintiff must show that 1) he engaged in protected activity, 2) the exercise of his civil rights was known to the defendant, 3) he subsequently suffered an adverse employment action, and 4) there was a causal connection between plaintiff's protected activity and the adverse employment action. *See Mulhall, v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002).

Defendant argues that plaintiff's prima facie case fails because he cannot establish that his alleged protected activity was known to anyone at its Knoxville Terminal and because plaintiff cannot establish a causal connection between the protected activity and his discharge. The court agrees.

The evidence of record includes sworn testimony of the decision maker, Rose, and the supervisors who dealt with plaintiff, in which they denied any knowledge of the discrimination charge filed in 1997, seven years before plaintiff was employed by defendant. Plaintiff has not produced any direct or circumstantial evidence to rebut these denials. What he offers is the theory that once plaintiff started work, those at the terminal who recognized him "quickly explained Mr. Frazier's status to the new terminal manager" and he was then

terminated. There is no evidence to support this theory, and it is speculative at best. "Where the decisionmaker denies having knowledge of the alleged protected activity, the plaintiff must do more than offer[ ] only conspiratorial theories . . . or flights of fancy, speculations, hunches, intuitions, or rumors." *Profitt v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 150 F. App'x 439, 443 (6th Cir. 2005) (internal quotation marks and citations omitted).

Plaintiff's prima facie case of retaliation also fails because he has not demonstrated a causal link between his 1997 charge and defendant's decision to stop calling him for work in 2004. There is certainly no temporal proximity, since seven years had past. Further, defendant was hired by the defendant after making the discrimination charge, a fact that breaks any causal connection. Summary judgment is therefore appropriate as to plaintiff's retaliation claim.

## IV.

### *Conclusion*

Therefore, for the reasons set forth herein, the court finds that plaintiff has failed to demonstrate a prima facie case of race discrimination. The court further finds that even if plaintiff had made out a prima facie case, he has not shown that the defendant's proffered reasons for its decision to stop calling him to work were a pretext for race discrimination.

Accordingly, defendant's motion for summary judgment will be granted, and this case will be dismissed.  An order consistent with this opinion will be entered.


ENTER:


_____s/ Leon Jordan_____
United States District Judge